### A02A1452. SIMMONS v. REGIONS BANK, GEORGIA.
(567 SE2d 49)

ELDRIDGE, Judge.
In June 1999, appellee-plaintiff Regions Bank, Georgia (the "Bank"), successor in interest to Etowah Bank,[1] brought suit in the Superior Court of Paulding County on a promissory note against appellant-defendant E. E. Simmons seeking principal in the amount of $1,485,038.80, plus interest and attorney fees. Simmons timely filed his answer and counterclaim, denying that he owed the principal and interest which the Bank claimed, and alleging that the Bank had refused to honor verbal agreements to extend the amortization schedule on the loan thereby lowering his monthly payments and

---

[1] The Bank succeeded to Etowah Bank's interest in this case as a result of an apparent merger.

had overcharged interest and late fees and that he was entitled to actual and punitive damages. On March 6, 2000, Simmons filed a petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Northern District of Georgia. A year later, after a hearing upon the Bank's motion to determine the amount of its claim against Simmons, the bankruptcy court ruled that the Bank's claim "shall be allowed in the principal amount of $1,492,358.53, interest as of November 16, 2000 of $280,460.61, plus interest thereafter at the contract rate, which is presently $449.75 a day." Simmons dismissed his bankruptcy case with prejudice on February 15, 2001. In the superior court, the Bank next moved for summary judgment as to its complaint on the promissory note only, and, on May 7, 2001, the court granted it partial summary judgment thereon. Four months later the Bank moved for summary judgment on Simmons's counterclaim. On October 19, 2001, Simmons filed his amended counterclaim, averring that the Bank foreclosed on property he pledged as collateral on the note in issue, having "chilled" negotiations for the sale of the property to a third party. Summary judgment for the Bank on Simmons's counterclaim followed on January 18, 2002, the superior court finding the same barred by the doctrine of res judicata as raising matters put in issue or which might have been put in issue before the bankruptcy court.

On appeal Simmons contends that the superior court erred in granting the Bank's motion for summary judgment upon his amended counterclaim, arguing that (1) the judgment of the bankruptcy court was not entitled to res judicata effect as not entered at an "adversary proceeding" within the meaning of the rules of federal bankruptcy procedure; (2) the judgment of the bankruptcy court was not entitled to res judicata effect as to the Bank's motion seeking summary judgment on his counterclaim because no issue on the counterclaim was decided by the trial court upon its grant of partial summary judgment to the Bank as to the value of its claim on the promissory note; and (3) even were the contrary true, res judicata effect cannot extend to matters as to which he had no opportunity to litigate in the bankruptcy court, such matters having arisen after the bankruptcy court entered its judgment against him. Finding no error in summary judgment for the Bank upon Simmons's counterclaim and a valid counterclaim pending, we affirm with direction. *Held*:

1. Simmons correctly points out that the Bank's motion to determine the amount of its claim against him in the bankruptcy court was procedurally defective as not initiated as an adversary proceeding by summons and complaint.

> A proceeding to determine the validity, priority, or extent of a lien or other interest in property is an adversary proceed-

ing governed by Part VII of the Bankruptcy Rules. Rule 7001 (2). Part VII requires that adversary proceedings be initiated by summons and complaint. Bankruptcy Rules 7003, 7004.

*In re Crabtree*, 51 Bankr. 521, 524 (I) (E.D. Tenn. 1985). However, the substantive issues raised by the Bank's motion were nonetheless at issue during the bankruptcy court's hearing on the motion; Simmons does not contend that the bankruptcy court disposed of the Bank's motion over his objection through counsel or that the judgment of the bankruptcy court was improper. Under these circumstances, it was not error that the bankruptcy court disposed of the valuation question before it. Id. Even were the contrary true,

> For a prior action to bar a subsequent action under the doctrine of res judicata, several requirements must be met: The first action must have involved an adjudication by a court of competent jurisdiction; the two actions must have an identity of parties and subject matter; and the party against whom the doctrine of res judicata is raised must have had a full and fair opportunity to litigate the issues in the first action. (Citations omitted.) *Fowler v. Vineyard*, 261 Ga. 454, 455-456 (405 SE2d 678) (1991).

(Punctuation omitted.) *V.I.P. Homes v. Weader*, 216 Ga. App. 412-413 (1) (454 SE2d 548) (1995); see also OCGA § 9-12-40 ("A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.").

In the context of the last of the criteria determinative of whether the judgment of the bankruptcy court should be given res judicata effect, the question is not whether the judgment of the bankruptcy court followed an adversary proceeding under the rules of bankruptcy procedure or a hearing on motion to determine the value of the Bank's claim. Rather, it is whether there has been a full and fair opportunity to litigate the issues. See *V.I.P. Homes v. Weader*, supra at 413 (1) (res judicata as not applicable following adversary bankruptcy proceeding in the absence of a hearing on the merits). This Simmons received. See Division 2, infra. Accordingly, the superior court did not err in granting the Bank summary judgment on its counterclaim for procedural defect before the bankruptcy court.

2. Simmons does not challenge the bankruptcy court as not of competent jurisdiction. Neither does he contend that there here is

not an identity of parties and subject matter. Moreover, Simmons does not challenge the finding of the superior court that "substantially all points of [Simmons's] counterclaim were raised . . . , apparently considered [by the bankruptcy court], and rejected. . . ." Also unchallenged are further findings of the superior court that:

> [Simmons] objected to the [Bank's] proof of claim, claiming (1) improperly calculated interest; (2) several renegotiations of the loan in or about 1994 that affected the amount of interest due and the amount of the contract payments; (3) payments higher than provided for in the note; (4) verbal agreements to have the loan balance "amortized over 20 years," but later disregarded by the Bank; (5) several informal agreements to reduce the amounts of the loan payments, resulting in excess loan payments that subsequently exceeded the amount due; (6) arbitrary changes in allocations of interest and thus the amount of payment due; and that (7) the Bank had several blank contracts with [Simmons's] name on them which were subsequently altered and used inappropriately.

Simmons argues that summary judgment for the Bank on his counterclaim was error on the basis of the doctrine of res judicata since his counterclaim was not in issue upon the superior court's grant of partial summary judgment to the Bank as to the value of the promissory note. However, res judicata effect in the judgment of the bankruptcy court, as a matter of law, is undisputed in the record, as above. *Fowler v. Vineyard*, supra; *V.I.P. Homes v. Weader*, supra.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996).

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Thus considered, we conclude that the superior court properly granted the Bank summary judgment as to Simmons's counterclaim.

3. By his final claim of error, Simmons contends that even if summary judgment for the Bank on his counterclaim were deemed proper upon the res judicata doctrine (and we have held it was), such grant of summary judgment was error insofar as it reached his

amended counterclaim. In this regard, Simmons properly argues that res judicata cannot be applied to his amended counterclaim alleging tortious conduct in the Bank arising out of its foreclosure upon the land he gave as collateral for the Bank's loan on the promissory note — this because the June 2001 foreclosure was neither in issue nor subject to being put in issue before the bankruptcy court on December 5, 2000, when it heard the Bank's motion to determine the value of its claim against Simmons.

Simmons nonetheless misconstrues the superior court's grant of summary judgment on his counterclaim as reaching his amended counterclaim.

> By the device of summary judgment, the trial court can eliminate extraneous issues from the ultimate trial and yet protect the party against whom the grant of summary judgment is rendered pending the trial of the counterclaim by the expedient of refusing to issue a final judgment until the counterclaim is concluded.

*Mock v. Canterbury Realty Co.*, 152 Ga. App. 872, 879 (1) (264 SE2d 489) (1980). Here the error of the superior court is not its grant of summary judgment for the Bank on Simmons's counterclaim; rather, the superior court erred in entering a final judgment while leaving the amended counterclaim pending; such error is harmless given supersedeas resulting upon the instant appeal as timely filed. Id. Consequently, we affirm the final order granting the Bank partial summary judgment on Simmons's counterclaim with "direction that the amount of [the Bank's] recovery against [Simmons] — for which fi. fa. will issue after trial of the [amended] counterclaim — be reduced by the amount, if any, that [Simmons] may recover on [such] counterclaim." Id.

*Judgment affirmed with direction. Smith, P. J., and Ellington, J., concur.*

DECIDED JUNE 13, 2002.

*Gammon & Anderson, W. Wright Gammon, Jr.*, for appellant.
*Sutton & McCreary, Timothy A. McCreary*, for appellee.